UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| RICHARD DAVID HALL, JR, | ) |
| | ) |
| Petitioner, | ) 2:21-CV-00003-DCLC |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richard David Hall, Jr. ("Hall") asks the Court to vacate his sentence because he says he received ineffective assistance of counsel in violation of the Constitution [Doc.1].[1] The United States has responded [Doc. 5]. The matter is now ripe for disposition. Because the record is adequate to address his claims, the Court will decide Hall's petition filed under 28 U.S.C. § 2255 without an evidentiary hearing. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.1993).

**I.  BACKGROUND**

On November 15, 2018, the Grand Jury indicted Hall, among others, for a conspiracy to distribute 50 grams or more of methamphetamine and for possessing a firearm in furtherance of a drug trafficking crime [Doc. 1]; *see also* 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A); 18 U.S.C. § 924(c)(1)(A). On May 14, 2019, Hall entered into a Plea Agreement with the United States in which he stipulated that he had, in fact, conspired to distribute "at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine." [Doc. 95, ¶ j]. The plea agreement also described an incident that occurred on April 21, 2016, when Emergency Medical Services and Law

---

[1]  The petition was also filed in the underlying criminal case, No. 2:18-CR-179, as [Doc. 306].

1

Enforcement were called to 1223 Doe Creek Rd., Butler, Tennessee, "the residence of [Hall] and Paula Anson" in response to a drug overdose [Doc. 95, ¶ 4(b)]. Hall had to be taken to the hospital along with Jeff Stout. Stout ultimately died from an overdose. Hall agreed that officers searched the residence and found 16 grams of methamphetamine, a .45 caliber pistol, and firearm and over $15,000 in U.S. currency [*Id.*]. Hall also agreed that he primarily distributed methamphetamine from his residence [*See* Doc. 95, ¶¶ 4(d) ("CS stated he had gone to Defendant's residence with Travis Reece"); 4(f) ("Reece said that the transactions typically took place at Defendant's residence…."); 4(g) ("a controlled purchase of … methamphetamine was made from Defendant at his residence located at 1223 Doe Creek Rd., Butler, TN"); 4(h) (Wills … stated that the only place he had received methamphetamine from Defendant was at Defendant's garage" and that "he had observed … others pick up methamphetamine from Defendant at his garage")]. In return for his plea, the United States agreed to dismiss the firearm charge in the second count.[2]

After the Court accepted Hall's guilty plea, the Court ordered the preparation of a presentence report ("PSR"). The PSR determined Hall's base offense level to be level 36 but found two enhancements applied. First, it found Hall had possessed the firearm found at his residence on April 21, 2016, a date during the time frame of the conspiracy. This resulted in an increase of two levels. *See* U.S.S.G. § 2D1.1(b)(1). The PSR noted the .45 caliber pistol recovered was inside the bedroom dresser, which was the same dresser the methamphetamine was found. It also noted the other firearm was a 20-guage shotgun which was beside the same dresser [*Id.* at ¶ 19].

Second, the PSR enhanced Hall's offense level by another two-levels for maintaining a premises for the purpose of distributing a controlled substance. *See* U.S.S.G. § 2D1.1(b)(12). In support, the PSR referred to co-defendant Travis Reese's claim that Hall was Reece's primary

---

[2] Had Hall been convicted of that offense, he would have faced an additional five-year consecutive sentence. *See* 18 U.S.C. § 924(c).

source of supply for methamphetamine for the past year with those transactions occurring at Hall's residence [Doc. 160, ¶ 13]. It also cited a controlled purchase at Hall's residence on February 22, 2017 [*Id.* at ¶ 14]. The PSR cited the claim of co-defendant Bradley Wills that Hall supplied him approximately six ounces of methamphetamine a week with all those transactions occurring in Hall's garage at his residence [Doc. 160, ¶ 16]. The PSR noted that Wills also indicated that he had observed others pick up methamphetamine from Hall at his garage [*Id.*].

Hall had a prior misdemeanor marijuana conviction out of Johnson County and a prior misdemeanor methamphetamine conviction out of Carter County. The PSR ascribed one point for each of those convictions and determined that because Hall committed the instant offense while on probation for one of the misdemeanor convictions, two additional criminal history points should be added. Thus, the PSR determined Hall's criminal history category was III, based on four criminal history points. After deductions for acceptance of responsibility, the PSR calculated Hall's total offense level as 37, a criminal history category of III, which resulted in an advisory Guidelines Range of 262-327 months [Doc. 160, ¶ 75].

Hall's counsel objected to the application of both the firearm and maintaining a dwelling enhancement. He argued the firearm enhancement should not apply because the firearm discovered in the dresser was not connected to the offense, did not belong to Hall and was not even functioning [Doc. 166, pg. 1]. He argued the enhancement for maintaining a dwelling did not apply because he claimed he that he did not live there but only visited there occasionally to see his mistress, Paula Anson. He also objected to criminal history category III, arguing it should be II. He argued the total offense level should be 33, criminal history category II, with an advisory Guideline Range of 155-188 months [*Id.*]. Hall's counsel also moved for a downward variance based on his objections to the PSR, requesting a sentence of between 155 and 188 months [Doc. 167, pg. 4-5].

3

On September 20, 2019, the Court held a sentencing hearing and addressed Hall's objections. The Government proffered a collective exhibit of documents which had been included as part of the discovery in the case that related to Hall's objections [Doc. 250, pg. 4]. Hall's counsel objected, arguing the documents were inadmissible because "no people would be here to introduce them" and that he wanted to cross-examine the witnesses who made the statements [Doc. 250, pg. 5]. The Court overruled the objection and admitted the exhibit into evidence [Doc. 250, pg. 11].

The evidence included an incident report and related documents pertaining to the April 21, 2016 incident addressed in Hall's plea agreement. The incident report confirmed that Hall and his friend Jeff Stout had overdosed, and Emergency Medical personnel were called to his residence to render aid. Stout ultimately died. The documents also show Anson consented to a search of the residence. The bedroom door was deadbolted locked, which Anson unlocked [Doc. 250, pg. 23]. Officers searched the bedroom dresser and discovered methamphetamine, digital scales, and glass pipes with burned residue [Doc. 250, pg. 13-14, 17]. They also found in the same bedroom dresser a loaded .45 caliber handgun, which Anson identified as Hall's gun but claimed he intended to take it to his father's [Doc. 250, pg. 15, 17]. Next to the dresser was a loaded .20-gauge shotgun [Doc. 250, pg. 18]. And, although a gun safe was also in the room, the firearms were not stored there [Doc. 250, pg. 22]. Officers also found stacks of money with rubber bands around them. The documents also noted that the residence was fitted with surveillance equipment [Doc. 250, pg. 12].

The exhibit included Hall's statement and the statements of other co-defendants. Hall admitted to travelling with Jamie Ferguson to Atlanta to purchase methamphetamine and that Ferguson took a handgun with them on the trip [Doc. 250, pg. 18]. Co-defendant Travis Reece identified Hall as his primary supply source of methamphetamine and that Reece would pick up three pounds of methamphetamine at Hall's residence in Johnson County, Tennessee [Doc. 250,

pg. 20]. Co-defendant Bradley Wills admitted to purchasing methamphetamine from Hall in Hall's garage and observing firearms present [Doc. 250, pg. 22-23]. And, although Wills claimed that the firearms did not appear "to be for use," he believed Hall had "traded [them] for methamphetamine" [Doc. 250, pg. 22].

In ruling on the firearm enhancement, the Court found the Government had met its initial burden of showing the firearm was present during the relevant period. This shifted the burden to Hall to show it was "clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1.1(b)(1), Application Note; [Doc. 250, pg. 32]. On that point, the Court asked whether Hall wanted to present any evidence regarding the application of the firearm enhancement. Hall's counsel asked if he could "ask my client if he would want to put some proof on." [Doc. 250, pg. 34]. After consulting with Hall, Hall's counsel made his own offer of proof that some of the money officers seized at his residence was returned by the State of Tennessee. He also proffered that Hall claimed the firearms "belonged to Paula Haynes[sic] [, that] [Hall] had nothing to do with [them] . . . . [Hall] did not exercise control over nor did he have anything to do with the gun or anything else that was in the house." [Doc. 250, pg. 35]. Hall elected not to testify.

On his second objection to the maintaining a dwelling enhancement Hall's counsel argued that "all the people that the Government has mentioned thought that he lived there, but he didn't live there…. [His] mistress lived there, but he didn't live there." [Doc. 250, pg. 28]. He argued Hall did not have control over the property and thus the enhancement should not apply [Doc. 250, pg. 43-44]. The Court noted that Hall had stipulated that it was his "residence" and that claiming that he did not live there seemed to contradict the facts he had already agreed were true. In response to that, Hall's counsel, after speaking with Hall, advised the Court that he wanted to withdraw his objection to that enhancement [Doc. 250, pg. 53].

On the firearm enhancement, the Court ruled that Hall had stipulated in his plea agreement that officers found 16 grams of methamphetamine, a .45 caliber pistol and over $15,000 in cash at

5

his residence and that those items were discovered inside his dresser, with the drugs being near the gun. [Doc. 250, pg. 56-57]. It found the enhancement applied. The Court also addressed his other objection. The Court noted that Hall had stipulated that the house was his residence and had even told EMS he lived there as well [Doc. 250, pg. 45]. The Court found that based on the stipulations contained in the plea agreement, Hall exercised de facto control over the residence and that Hall sold methamphetamine exclusively from the garage [Doc. 250, pg. 59]. The Court concluded the maintaining a dwelling enhancement applied.

However, the Court questioned whether the PSR should have added a criminal history point for the Carter County conviction because it was for possession of methamphetamine and related to the underlying federal conviction [Doc. 250, pg. 24-25]. The Government agreed that it should not apply. The Court removed a point, which dropped Hall's criminal history category from III to II and reduced his Guideline Range to 235 to 293 months [Doc. 250, pg. 60]. The Court then analyzed the sentencing factors outlined in 18 U.S.C. § 3553(a), and sentenced Hall to the bottom of the range of 235 months imprisonment [Doc. 197]. Hall filed a Notice of Appeal [Doc. 194] but later voluntarily dismissed it. The Sixth Circuit dismissed his appeal on January 21, 2020 [Doc. 253].

On January 11, 2021, Hall filed this petition to vacate his sentence [Doc. 1]. Hall's petition purportedly raises four grounds for relief. First, he claims his counsel was ineffective regarding his advice regarding the plea agreement, "which violated his rights to counsel under the Sixth and Fourteenth Amendments of the Constitution." [Doc. 1-1, pg. 5]. Second, he claims his counsel was ineffective because he failed to object to the quantity of drugs in his plea agreement "verses the quantity of drugs contained in [his] indictment." [Doc. 1-1, pg. 9]. Here he claims his counsel did not advise him that the quantity listed in the indictment had to be proven beyond a reasonable doubt and contends that hearsay evidence is not sufficient to prove the quantity. Third, he claims his counsel was ineffective "in his preparation to represent Mr. Hall during the sentencing

6

regarding … [the] enhancement of 2 points under 2D1.1(b)(1) for possession of a dangerous weapon." [Doc. 1-1, pg. 11]. Fourth, he claims his counsel was ineffective "in his performance … regarding his failure to research authority and adequately prepare in regards to his sentencing hearing, specifically the enhancement under U.S.S.G. § 2D1.1(b)(12), maintaining a premises." [Doc. 1-1, pg. 14].

## II. STANDARD OF REVIEW

This Court must vacate a sentence if "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack…." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the fact of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4. "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (citations omitted).

When a Section 2255 motion is based on purported ineffective assistance of counsel, the petitioner must establish two elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficiency, the outcome of the proceedings would have been different. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Under the first prong, there must be evidence that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687). As to the second "prejudice" prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."

7

*Griffin*, 330 F.3d at 736. The petitioner must establish counsel's constitutionally defective performance by a preponderance of the evidence. *Packett v. United States*, 738 F. App'x 348, 352 (6th Cir. 2018) (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)). Still, a review of counsel's performance must be highly deferential and requires the courts to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

## III. ANALYSIS

### A. Ground One - Whether trial counsel was ineffective in plea negotiations.

Hall claims his trial counsel was ineffective "regarding his review and conunsel [sic] of defendant's plea agreement, which violated his rights to counsel under the Sixth and Fourteenth Amendments of the Constitution." [Doc. 1-1, pg. 1]. He claims his counsel "did not perform his due diligence" in researching authority in his case [Doc. 1-1, pg. 6]. In support, he cites his counsel's admission that "he should have objected to that particular language [regarding Hall's residence] as well . . . or maybe struck it through the plea agreement" when it addressed Hall's residence [Doc. 1-1, pg. 6]. He also claims his counsel failed to properly advise him regarding the conspiracy count. Here he argues the grand jury "broadened" the terms of 21 U.S.C. § 846, the conspiracy statute by including the words "knowingly, intentionally, without authority, combine, conspire, confederate and agrees" in the indictment, language not included in § 846. Hall contends the Government could not have proven those additional factors.

In response, the Government claims that including the words "knowingly, intentionally, without authority, combine, confederate and agree" in the indictment was not in error, and Hall's counsel need not have objected to the inclusion of those additional terms. Rather than impermissibly broadening the scope of the statute, the Government argues the language used in the indictment corresponds to the elements of the charged offense [Doc. 4, pg. 4-5]. The

8

Government argues that because the indictment was not defective, Hall's counsel had no responsibility to object to it. It noted that while Hall's counsel admitted to inadvertently filing a document publicly instead of under seal, that in and of itself does not establish he was unprepared or unable to represent Hall.

The Court first addresses Hall's claim that the indictment broadened the scope of the conspiracy statute. "To sustain a conviction for drug conspiracy under section 846, the government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007); *see* 18 U.S.C. § 846. An indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It is "generally sufficient if it "fully, directly, and expressly ... set[s] forth all the elements necessary to constitute the offense intended to be punished." *United States v. Schaffer*, 586 F.3d 414, 422 (6th Cir. 2009). "In particular, the indictment must: (1) 'set out all of the elements of the charge[d] offense and must give notice to the defendant of the charges he faces[,]' and (2) 'be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.'" *Id.* (quoting *United States v. Douglas*, 398 F.3d 407, 413 (6th Cir.2005).

Hall argues his counsel was ineffective for not advising him the indictment broadened the scope of § 846. His argument is without merit because the indictment did not. In *Schaffer*, the Sixth Circuit passed on an indictment that charged the defendants with conspiracy to commit computer fraud alleging that they did "unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree together ... to commit computer fraud." *Id.* at 422. The Sixth Circuit found the language of the indictment "contained on its face all the elements necessary to state a federal offense." *Id.* That is all that is required.

But even assuming some facial issue with the indictment, Hall does not claim that he pled to something not within the scope of § 846 or that he pled to something that was not a crime. In fact, the contrary is true. Hall signed a plea agreement in which he agreed he was pleading guilty to "Count One, that is, a conspiracy to distribute fifty grams or more of methamphetamine, its salts, and salts of its isomers, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)." [Doc. 95, ¶ 1(a)].

Hall also complains in ground one that his counsel was ineffective because his counsel admitted that he should have "struck" out language in the plea agreement that indicated where Hall resided. But Hall's critique of his counsel rings hollow. Hall knew where he lived. He told EMS he lived with Anson even *before* he was indicted in this Court. He told the magistrate judge before whom he entered his plea that he agreed with the factual basis in his plea agreement. If he did not live at that residence with Anson, he could have easily stated that. But he did not. Even his co-defendants believed Hall lived there and trafficked in methamphetamine there. Notably, in his petition, Hall does not identify another residence where he claims to have resided. This issue is without merit.

B.  **Ground Two - Whether trial counsel was ineffective for not objecting to the weight of methamphetamine in the plea agreement.**

For his next ground, Hall claims his counsel was ineffective in "failing to object to the quantity of drugs contained" in his plea agreement compared to the quantity contained in the indictment [Doc. 1-1, pg. 9]. Hall argues the indictment fails to allege a quantity of

methamphetamine.³ He also alleges here that the Court erred in admitting the proffered statements of his co-defendants who attributed quantities of methamphetamine directly to him. He claims that a competent attorney "would have destroyed the CI's credibility, and convinced a jury their testimony was not reliable." [Doc. 1-1, pg. 9]. He also claims that "the determination of drug quantity under [§ 841(b)] must, when it subjects a defendant to an enhanced sentence, 'be considered an element of the offense rather than a sentencing factor.'" [Doc. 1-1, pg. 10] (quoting "*United States v. Valencia*, 188 F. App'x 395 […] (6th Cir. 2001).").

In his plea agreement, Hall agreed he was responsible for distributing more than 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine [Doc. 95, ¶ 4(j)]. He also acknowledged the punishment for this offense was a "minimum mandatory ten years up to life imprisonment…." [Doc. 95, ¶ 1]. Thus, his plea to a conspiracy involving more than 1.5 kilograms of actual methamphetamine did not increase the statutory penalty. The statutory penalty, as noted in Hall's plea agreement, is a minimum of 10 years and a maximum of life in prison. Hall was sentenced within that range. His argument is without merit.

Included in this ground as well, Hall complains his counsel was ineffective in his objections to the admissibility of the proffered documents made by the Government. Those documents included the incident report of the April 21, 2016 drug overdose, Hall's statement, and those of some of his co-defendants. Hall claims hearsay evidence is not enough to establish drug quantity. As an initial matter, Hall stipulated that he distributed more than 1.5 kilograms of

---

³ As an initial observation, Hall's claim here is directly contradicted by the indictment. The indictment charges "that on or about February 1, 2015, and continuing to on or about November 14, 2018, within the Eastern District of Tennessee and elsewhere, the defendants, RICHARD DAVID HALL, JR. . . . and other persons known and unknown to the Grand Jury, did knowingly, intentionally, and without authority combine, conspire, confederate and agree to commit the following offense against the United States of America: the distribution of *50 grams or more* of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)." [21 U.S.C. §§ 846, 841(b)(1)(A)]. [Doc. 1-1, pg. 18] (emphasis added).

methamphetamine. The drug quantity was not at issue. Moreover, to the extent he argues hearsay is not proper at sentencing hearings, "[d]istrict courts routinely rely on hearsay for the factfinding part of a *sentencing decision*. So long as the information has 'some evidentiary basis' to satisfy a 'minimal indicium of reliability,' the district court can consider it without regard for the rules of evidence." *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019) (quoting *United States v. Silverman*, 976 F.2d 1502, 1504 (6th Cir. 1992)) (emphasis added). "The indicia-of-reliability standard is a relatively low hurdle." *Id.* In any event, Hall's counsel objected to the evidence, and the Court overruled his objection. His counsel was not ineffective in this regard.

**C.     Ground Three - Whether Hall's counsel was ineffective at the sentencing hearing regarding the firearm enhancement under U.S.S.G. § 2D1.1(b)(1).**

For his third ground for relief, Hall claims his counsel was ineffective "in his preparation to represent [him] during sentencing" regarding the two-point enhancement for possessing a firearm under U.S.S.G. § 2D1.1(b)(1). He argues the enhancement increased the mandatory minimum sentence and was therefore an element of the offense [Doc. 1-1, pg. 12]. He also claims that "the gun charge could not have been proven beyond a reasonable doubt, as [Hall] was unconscious when the police arrived at [] Anson's home on April 21, 2016, and there was no other time when police were present during a drug transaction." [Doc. 1-1, pg. 13].

In response, the Government argues that the fact that it decided to dismiss the gun charge under 21 U.S.C. § 924(c) is irrelevant to whether the enhancement should apply. Its decision to dismiss the § 924(c) charge was a part of plea negotiations. Besides, the Government notes, the standard of proof is different for proving a conviction under § 924(c) and for applying a sentencing enhancement. Sentencing enhancements only need to be proven by a preponderance of the evidence [Doc. 4, pg. 8].

"For the [firearm] enhancement to apply, the government must prove by a preponderance of the evidence that [the defendant] had actual or constructive possession of the weapon during

12

relevant conduct." *United States v. Brown*, 856 F. App'x 36, 40 (6th Cir. 2021) (citations omitted). "A defendant constructively possesses a firearm if he knowingly "has 'ownership, or dominion or control over the [firearm] itself, or dominion over the premises where the [firearm] is located.'" *Id.* (quoting *United States v. Galvan*, 453 F.3d 738, 742 (6th Cir. 2006)). "If the government makes that showing, [the Court] presume[s] that the weapon was related to the offense." *Id.* "To rebut that presumption, [Hall] would have to 'show that it was 'clearly improbable' that the weapon was connected to the offense.'" *Id.* (quoting the Application Note to U.S.S.G. § 2D1.1(b)(1)).

Here, Hall does not point to any deficiencies in his counsel's performance. The facts drive the application of the enhancement. Anson claimed the gun belonged to Hall and it was found in Hall's bedroom dresser along with 16 grams methamphetamine. The evidence shows Hall possessed the firearm in connection with his drug activities [Doc. 250, pg. 57-58]. This conclusion is consistent with Sixth Circuit precedent which has "repeatedly and frequently held that constructive possession may be shown to exist if the contraband is found in a defendant's bedroom or personal living space." *Id.* (quoting *United States v. Malone*, 308 F. App'x 949, 952–53 (6th Cir. 2009) (collecting cases)). That is what happened here. Hall has not shown what more his counsel could or should have done or how he suffered any prejudiced. This issue is without merit.

**D.**     **Ground Four - Whether trial counsel was ineffective at the sentencing regarding the two-level enhancement he received under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing a controlled substance.**

For his fourth ground for relief, Hall claims his counsel did not adequately prepare to address the maintaining a dwelling enhancement under U.S.S.G. § 2D1.1(b)(12). Here he claims that he did not maintain a dwelling because he "visited Anson frequently for the purpose of a sexual encounter … not for the purpose of selling drugs." [Doc. 1-1, pg. 14]. He claims he "exercised no control over the premises, did not live there, did not receive mail there, had no vehicles registered there, did not have keys to the residence or garage, not even the dead bolt on the bedroom door. This was all under the possession of Ms. Anson. Perhaps, even the drug activity

13

as well. Being a user of drugs does not necessarily make you a dealer of drugs." [Doc. 1-1, pg. 14].   He also argues that this enhancement is "an element of the crime based on the 'severity' of the increase and 'risk of unfairness.'  This charge should have been a part of the indictment, and proved to a jury beyond a reasonable doubt." [Doc. 1-1, pg. 16].

At the sentencing hearing, Hall's counsel withdrew the objection to the application of this enhancement, and he did so in consultation with Hall [Doc. 250, pg. 53 ("After discussion with my client, we're going to withdraw our second objection at this time")].  "When one knowingly waives his charged error, that challenge is forever foreclosed …." *United States v. Heredia-Prieto*, 742 F. App'x 962, 965 (6th Cir. 2018) (citations omitted). But, as the Government argues, his counsel was rightly concerned that making factual assertions that contradict the contents of Hall's plea agreement exposes Hall to losing the two-level reduction for acceptance of responsibility.

In his petition, Hall argues the residence "was all under the possession of Ms. Anson. *Perhaps, even the drug activity as well.  Being a user of drugs does not necessarily make you a dealer of drugs*." [Doc. 1-1, pg. 14] (emphasis added).  But Hall admitted in his plea agreement it was his residence [Doc. 95, ¶¶ 4(b), 4(d), 4(f), 4(g),4(i)].  And he agreed he distributed over 1.5 kilograms of methamphetamine.  Using drugs might not equate with dealing drugs, but distributing certainly does.

At his plea colloquy, the Court[4] questioned Hall under oath about the truthfulness of the facts contained in his plea agreement and he agreed those facts were true.  "[A] habeas petitioner faces a heavy burden in collaterally attacking a guilty plea based on allegations contrary to oral responses given in open court during a Rule 11 colloquy." *Garnica v. United States*, 361 F.Supp.2d 724, 733 (E.D. Tenn. 2005) (citing *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992) and *United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998)). "[W]here procedures [pursuant

---

[4] The undersigned was the magistrate judge who took Hall's plea and filed a Report and Recommendation regarding accepting Hall's plea to count one [Docs. 115, 117].

to Fed. R. Crim. P. 11] were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court...." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."). This issue is without merit.

Finally, Hall claims that applying this enhancement was an element of the offense [Doc. 1-1, pg. 16]. He cites to no authority that has ever held that applying the enhancement for maintaining a dwelling constituted an element of the offense. The "drug-house" or premises enhancement "applies to anyone who (1) knowingly (2) opens or maintains any place, (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Uminn*, 820 F. App'x 353, 356–57 (6th Cir. 2020). The evidence showed that Hall did not just use methamphetamine, he knowingly maintained the residence with Anson for the purpose of distributing methamphetamine. That is sufficient for the enhancement to apply. He points to nothing in his counsel's representation of him that would have made any difference. Thus, this final issue is without merit.

## IV.   CONCLUSION

For the reasons set forth above, the Court holds that Hall's sentence was not in violation of the Constitution or laws of the United States and that he has not shown he received ineffective assistance of counsel. Accordingly, his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is **DENIED** and the motion is **DISMISSED**. Hall's motion to appoint counsel [Doc. 5] is therefore **DENIED** as **MOOT**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

15

Circuit disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not conclude that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each claim raised.

A separate judgment will enter.

SO ORDERED:

s/Clifton L. Corker<br>
United States District Judge